IN THE UNITED STATES FEDERAL DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **ROGER S. FULLER, JR.,** | § | |
| | § | |
| | § | |
| | § | |
| **vs.** | § | **Case No.7:17 cv00564** |
| | § | |
| | § | |
| **CARILION CLINIC** | § | |
| | § | |
| | § | |
| | § | |
| | § | |

---

## FIRST AMENDED COMPLAINT

COMES NOW THE PLAINTIFF, Roger S. Fuller Jr.,  (hereafter Fuller) and files this  First Amended Complaint against Defendant Carillon Clinic (hereafter Carilion),  and in support thereof states as follows:

Parties

1. Plaintiff is a resident of the City of  Roanoke, residing  in the City of Roanoke.

2. Defendant Carillon Clinic is a private Virginia corporation with its principal offices located in the City of Roanoke, Virginia and may be served at the offices of its registered agent,  213 S. Jefferson Street, Suite 1600, Roanoke VA 24011.

3. Steve Lugar is the Chief of the Carilion Police and Security Services Department.

4. Ronald Donelson is a Captain employed by the Carilion Police and Security Services Department.

1

5.  A.D. Janney is a police officer employed by the Carilion Police and Security Services Department.

<u>Jurisdiction and Venue</u>

This Court has subject matter jurisdiction over two claims alleging violations of 42 U.S.C. § 1983 pursuant to 28 U.S.C. §1331.  This Court has supplemental jurisdiction over the state law claims set forth herein pursuant to 28 U.S.C. 1367.

Venue is proper in this Court under 298 U.S.C. § 1391 (b)(2).

<u>FACTS</u>

1.  The Commonwealth of Virginia, by act of the 2015 General Assembly,  has authorized Carilion Clinic to maintain the Carilion Police and Security Services Department (hereafter Carilion Police), specifically recognizing that no entity is authorized to operate a private police department unless it has been authorized by statute or an act of assembly.  The 2015 Virginia General Assembly has granted Carilion private police department status pursuant to Va Code Sec. 9.1-101.

2. In authorizing private police departments, the General Assembly requires that private police departments and private police officers shall be subject to and comply with the Constitution of the United States, the Constitution of Virginia, the laws governing municipal police departments and all regulations of the Virginia Criminal Justice Services Board that apply to private police departments.

3.  Lugar, Donelson and Janney are defined by the General Assembly as "law enforcement offi-cers". They were, at all times relevant hereto, full-time or part-time employees of the Carilion Police department.

4. Carilion Police have the same plenary police power and perform the same law enforcement as are traditionally reserved for the Commonwealth of Virginia.  Private police are required to maintain all requirements, including the minimum compulsory training requirements, for law enforcement officers within Virginia.  Carilion Police are not security guards, special police,  or conservators of the peace as defined by the Virginia Code and are not included in the regulatory scheme for police with limited law enforcement authority.

5. The Carilion Police are authorized by statute and have the same law enforcement capabilities as public police officers.  Carilion Police are authorized to use the term "police"on badges and uniforms,  to carry firearms; effectuate arrests;  obtain warrants, wear police colors  and operate security vehicles with flashing lights. The jurisdiction of the Carilion police is limited by statute to the property owned and operated by Carilion.

6. For the purpose of public records, private police departments are considered to be public bod-ies who have the same duty to disclose public records as other custodians of public records pur-suant to Virginia Code sec. 2.2-3701.

 7. The Carilion Police department is not,  by statute,  a public body and is not a state agency. The authority of the Carilion Police does not supersede the authority, duties or jurisdiction vested by law with a local police department or sheriff's office.

8. The police officers employed by the Carilion police department are not employees of the Commonwealth of Virginia or any locality.

9.  At all times material hereto,  the Carilion Police Personnel were members of Carilion's  private police department and were employed by Carilion acting in their official capacity as police officers of the Carilion Police and Security Services Department.

10. The Carilion police do not have any civil authority to arrest any individual regarding any civil matter. This authority is limited for all law enforcement officers within the Commonwealth of Virginia.

11. At all times material hereto, Fuller was employed by Carilion Clinic as a janitor.

12. On September 14, 2017,  Fuller reported for work and shortly after beginning his shift discovered three burned, wooden stick matches and a singed piece of paper near the Carilion dentistry lab. Fuller notified a receptionist on duty at the time of what he had found.

13. Carilion police arrived at the scene and asked Fuller where the matches were found. Fuller showed  the Carilion police the matches and paper and identified the location where the items were discovered. A Carilion police officer instructed Fuller to throw the items in the trash and Fuller complied.

14. Approximately 15 minutes after  Fuller threw away the matches and paper, a second Carilion police officer confronted Fuller, asking Fuller if he "had something to hide" and stated to Fuller that he "must be guilty of something if [he] was shaking".  A short time later, the second police officer apologized to Fuller for his remarks, and then instructed Fuller to retrieve the matches and paper from the trash.  Fuller complied with the instruction.

15. Fuller suffers from Asperger syndrome and shaking, brought about by anxiety,  is a side effect of his disability.

16. The second Carilion police officer stated to Fuller that he was keeping the items for evidence.

17. Fuller completed the remainder of his shift without incident, and was not questioned further about the matches and the paper.  Fuller returned to his home after his shift ended at 1:30 a.m.

18.  The next day, September 15, 2017, at approximately 10:30 a.m.,  two Carilion Police officers, identified as Officer Garrett and  Officer Janney, driving an unmarked Carilion police vehicle and displaying sidearms, stormed Fuller's residence without warning or in response to any request.

19. Upon arriving at Fuller's home,  Carilion police staged a swat team, tactical style arrest known as a "surround and call out".  A "surround and call out" consists of stationing police at all entrances and exits,  pounding on the front door and ringing the door bell while simultaneously "calling out," to the occupant,  demanding that the occupant answer.  The effect of a surround and call out is to create panic and confusion for the occupants inside and prevent exit or escape.

20.  In response to the "surround and call out",  Fuller answered the door, whereupon he was told by Carilion Police that he was to put on a collared shirt  and that he  was going to go to the police station at Carilion for questioning.  Once Fuller opened the door, Carilion Police entered without permission, blocking the entrance and yelling at Fuller to change his clothes to go to the "police station".

21.  At all times Fuller was aware that the Carilion police were armed and they demonstrated to Fuller the ability to forcibly remove Fuller from his home by repeatedly placing their hands on their firearms while at Fuller's home.

22.  Fuller told police while he was inside his home that he wanted to make a phone call to his father, a retired police officer. Carilion police denied this  request and told Fuller that he was going to the police station.

23. Fuller then told the Carillon police that he did not want to go with them to the police station. In response, Carilion police threatened  Fuller and told Fuller that he would be charged with felony arson if he didn't go with them to the police station.

24. Fuller was in fear of Carilion Police while in his home and  believed the Carilion Police posed an immediate threat of bodily harm if he didn't comply with their demands. Fuller was reasonable in his belief after Carilion police forcibly entered his home and repeatedly placed their hands on their weapons.

25.  Fuller was then taken, against his will,  by Carilion police in a Carilion police vehicle to the Carilion police station.

26.  Upon arriving at the Carilion Police Department, Fuller was told that he was not allowed to call a lawyer, and that he was being taken through the "back entrance, which is for police and criminals".

27.  Fuller was then transported to a locked interrogation room. During the course of the interrogation Fuller was  humiliated, threatened and abused by Carilion Police Department personnel in the following manner:

        a. Fuller was told that he was going to confess to lighting three wooden stick matches and burning a napkin because he "has Asperger's disease which means he does stupid things";

        b. That Fuller was going to confess that he "did it" because his disability makes him do things and he doesn't even know that he does them;

        c. That Fuller needed to admit to lighting the matches  because he was on hidden security cameras and his finger prints were taken in the area where the matches were found;

        d. That because Fuller was shaking and nervous, it meant that he was lying;

e. That Fuller would be charged with felony arson if he didn't confess;

f. That if Fuller didn't confess his uncle ( a Carilion employee) would be fired;

g. That Fuller would embarrass his family and his church if he didn't confess;

h. That Fuller would lose his job if he didn't confess to lighting the matches;

i. That Fuller was not going to be allowed to leave until he confessed.

28. Fuller suffers from Asperger's syndrome which is characterized by nervousness, shaking and tremendous anxiety, particularly in situations involving loud noises, high conflict, and/or uncertainty. The Carilion Police were aware of Fuller's condition prior to Fuller's arrest and throughout the interrogation of Fuller, and took advantage of Fuller's disability to terrorize, threaten, intimidate and humiliate Fuller.

29. After two hours of interrogation Fuller reasonably believed that he was trapped in the Carilion police department interrogation room, and could not obtain any type of assistance. Consequently, Fuller decided to give a false confession to the Carilion Police in order to regain his freedom. Fuller was required to type the confession into a computer.

30. As soon as Fuller finished typing the confession, the Carilion Police allowed Fuller to leave the interrogation room.

31. Carilion Clinic, Fuller's employer, advised Fuller that the lit matches and singed paper were "an employment matter," and that Fuller was never under arrest. Carilion also advised Fuller that since he was never under arrest, "no Miranda rights were implicated."

32. The Carilion Police at no time issued a warrant to Fuller.

33. That Carilion Police had no probable cause to effectuate an arrest of Fuller; there was no evidence that a fire had been started, no portion of Carilion Clinic had been burned, damaged or destroyed, and Fuller had made no statement or committed any act prior to arrest which would lead a reasonable police officer to believe that Fuller had committed any acts which constituted felony arson under Virginia Code Section 18.2-77, or any other criminal statute involving crimes against property under Chapter 5 of the Virginia Code.

34. After Fuller was released, he was notified by Carilion that he was not to return to work.

35. On October 27, 2017 Carilion requested Fuller to meet with Carilion to continue their investigation, but only on the condition that Fuller meet with Carilion alone without counsel present. Fuller refused to meet Carilion without counsel for fear of being arrested by Carilion Police or being imprisoned again.

36. As a result of Fuller's refusal to meet Carilion without counsel present, Carilion terminated Fuller on November 24, 2017.


COUNT I

UNREASONABLE SEIZURE OF FULLER'S PERSON BY THE CARILION POLICE

COMES NOW THE Plaintiff and re-alleges and incorporates by reference herein paragraphs 1 - 36 of the "FACT" provisions of the complaint, and further states as follows:

1. Fuller has a constitutional right guaranteed by the 4th Amendment of the Constitution of the United States to be free from the unreasonable seizure (false arrest) of his person.

2. The Carilion Police were prohibited,  by virtue of Virginia Code § 9.101-1, from arresting Fuller at his private residence, which was outside the boundaries of Carilion Clinic property,  and beyond the Carilion Police department's jurisdiction.

3.  That at some point in time after Fuller's discovery of the matches and paper on September 14, 2017,  Chief Lugar, or his delegee,  acting in the capacity of Chief of the Carilion Police,  authorized, either directly or indirectly, the arrest, interrogation and false imprisonment of Plaintiff which led to the deprivation of Fuller's civil rights as set forth herein.  Chief Lugar or his delegated representative had final policymaking authority over the actions of Carilion's police department.

4. That at some point in time after Fuller's discovery of the matches and paper at Carilion on September 14 2017,  either independently,  or at the direction of his supervising officer,  Captain Donelson made a decision to arrest, interrogate and falsely imprison Fuller in derogation of his civil rights as set forth herein, and was present for and engaged in such conduct.

5. That at some point after Fuller's discovery of the matches and paper at Carilion on September 14, 2017,  either independently,  or at the direction of a supervising officer, Officer Janney made a decision to arrest, interrogate and falsely imprison Fuller in derogation of Fuller's civil rights as set forth herein,  and was present for and engaged in such conduct.

6.  That the conduct of  Lugar, Donelson and Janney,  independently and/or collectively,  constituted an omission of Carilion Police department policy,  in failing to preserve  Fuller's civil rights and resulting in a manifest indifference to them.   Alternatively,  the issue of any directive, order or authorization to carry out the false arrest, interrogation and imprisonment of Fuller constituted a policy decision made by the Carilion Police to deny Fuller's civil rights as alleged herein.

7.  That the conduct engaged in by the Carilion Police and the individuals Lugar, Donelson and Janney,  constituted a violation of the Carilion's statutorily-imposed policy requiring  compliance with the Constitution of the United States and the Virginia Constitution,  as mandated by the General Assembly as a prerequisite to maintaining a private police department pursuant to Virginia Code § 9.1-101.

8. The Carilion police,  having plenary law enforcement authority as granted by Virginia Code Sec. 9.1-101,  acted under color of state law and with the full power of a public law enforcement officer by performing a "surround and call out" procedure, commanding Fuller to go to the police station,  threatening Fuller with felony arson charges, acting with an open and obvious display of police authority, repeatedly gesturing toward their weapons,  blocking entrances and exits and positioning a police vehicle  so that no one could exit or enter Fuller's driveway and forcibly entering Fuller's home without permission.

9. Although without a warrant and outside their jurisdiction to effectuate an arrest, Carilion Police arrested Fuller, acting in such a manner so as to compel Fuller's compliance,  threatening Fuller with criminal prosecution and demanding that Fuller change clothes and leave to go with Carilion police to the "police station."

10. Carilion Police unreasonably seized Fuller's person by detaining Fuller and compelling Fuller to be transported, involuntarily, to the Carilion Clinic police station.

11. That Carilion Police further falsely  imprisoned Fuller by requiring that Fuller submit to an interrogation procedure before he could leave police custody.  Fuller's false arrest and detention continued when Carilion police refused to allow Fuller to leave the interrogation room despite his request to do so and denied Fuller the opportunity to seek assistance from his father or from legal counsel.

12. The conduct of the Carilion Police was intentional and committed without probable cause to believe that a crime was committed or was being committed.  Despite accusing Fuller of committing felony arson,   Carilion police had no evidence that would lead a reasonable police officer to believe that Fuller had committed or intended to commit any illegal acts under Virginia Code § 18.2-77 (arson) or any other criminal state or federal statute.  No warrant was obtained prior to Fuller's arrest at his home,  during the interrogation process, or even after Fuller gave his forced confession.

13. That as a result of the acts committed by the Carilion Police as described herein, Fuller has been injured. Carillon knew that Fuller suffers from Asperger's syndrome,  and Carilion police officers knowingly and intentionally engaged in arrest and interrogation tactics that are recognized and intended to cause the target of those tactics to experience fear, apprehension, anxiety, humiliation, distress and mental anguish. Consequently,  Fuller has suffered post-traumatic stress disorder,  the effects of which have been exacerbated by his Asperger's syndrome, in addition to the suffering the general psychological effects of  humiliation,  anxiety, emotional distress, sleeplessness and fear.

14. Because Carilion's  police  knew that Fuller suffered from a disability and despite knowing that the police arrest and interrogation tactics would accomplish the psychological damage inflicted upon Fuller, Carilion chose to engage in such a course of action with willful and reckless disregard of their effects on Fuller given Fuller's disability,  and without regard for his civil rights.  Consequently,  punitive damages are warranted to deter Carilion and others from like conduct in the future.

WHEREFORE, Fuller  demands judgment against the Defendant Carilion for its cause of action in an amount sufficient to compensate Plaintiff  for the injuries sustained and identified herein as well as pre- and post-judgment interest, court costs, attorneys fees, and any other damages as this Court may find to be just and appropriate, and as provided by law.

<u>COUNT II</u>

<u>UNREASONABLE SEIZURE OF FULLER'S PERSON BY CARILION CLINIC</u>

COMES NOW THE Plaintiff and re-alleges and incorporates by reference herein paragraphs 1-36 of the "FACT" provisions of the complaint, and further states as follows:

1.Fuller has a constitutional right guaranteed by the 4th Amendment of the Constitution of the United States to be free from the unreasonable seizure (false arrest) of his person.

2.  That on September 14, 2017, when Fuller discovered the burnt matches and the paper, Carilion had actual knowledge that no fire had been started on the hospital property. A receptionist told Fuller she smelled "something weird" and Fuller called the Carilion in-house emergency number and requested assistance from the fire department.  Carilion dispatched the police department and did not contact the Roanoke City Fire Department.

3. That Carilion police were aware that no fire existed on Carilion property at the time of the initial investigation on September 14, 2017.  Carilion police officers conducting the initial investigation on September 14, 2017  advised Fuller to throw away the matches and paper.  A short time later,  a second investigating officer instructed Fuller to retrieve the matches and paper from a garbage can.  At no time did any Carilion employee or police officer observe a fire, any attempt by Fuller to start a fire, nor was there any evidence or report of fire damage to any portion of the Carilion property.

4. Given  the complete lack of any evidence of arson or other type of property damage, Carilion considered the actions of Fuller to be workplace misconduct, and instructed its police officers to conduct their investigation from "an employment perspective."

5. At no time did Carilion police place Fuller under arrest, nor did Carilion have the authority to direct its police to make a warrantless arrest of Fuller under Virginia Code § 19.2-81.

6. In the course of investigating workplace misconduct, Carilion management and/or law enforcement personnel made a policy decision directing the Carilion police force to arrest, interrogate and falsely imprison Fuller.

7.  That in the course of investigating an incident of potential employee misconduct, a purely civil matter, Carilion was acting in accordance with a  policy of exercising it's plenary police power as a private police department to investigate potential workplace misconduct. Such policy is in derogation of Fuller's civil rights and prohibited pursuant to Virginia Code § 15.2-1704.

8.  That Carilion Police Chief  Lugar, or his delegated representative,  had final policymaking authority over the actions of Carilion's police department, and Chief Lugar's decision to order Carilion Police to falsely arrest, interrogate and imprison Fuller constituted a policy decision in deprivation of Fuller's civil rights.

9.  That the actions of Carilion as described herein and by reference in the incorporated paragraphs above, were intentional and committed without any probable cause to believe that a crime was committed.  Carilion acknowledged that its investigation was limited to an investigation from an "employment perspective",  rendering the circumstances a civil matter.  Because Carilion was investigating a civil matter, Carilion police did not have any authority to engage in any law enforcement activities and in arresting, interrogating and falsely imprisoning Fuller,  and thereby violated Fuller's constitutional rights.

10. Carilion's conduct was the proximate cause of Fuller's injuries.  Carillon personnel knew and were aware that Fuller suffers from Asperger's syndrome,  and Carilion knowingly and intentionally  engaged in arrest and interrogation tactics that are recognized within the law enforcement community to cause the target of such tactics fear, apprehension, anxiety,  humiliation, distress and mental anguish. Consequently,  Fuller has been diagnosed with and suffers from  post-traumatic stress disorder as a result of Carilion's actions.  The effects of Fuller's post traumatic

syndrome have been exacerbated by his Asperger's syndrome. Fuller has suffered psychological-ly, and still suffers the effects of humiliation, terror, anxiety, emotional distress, and fear.

11. Because Carilion knew that Fuller suffered from a disability and despite knowing that its ar-rest and interrogation tactics would accomplish the psychological damage inflicted upon Fuller, Carilion chose to engage in such a course of action with willful and reckless disregard of its ef-fects on Fuller in light of Fuller's disability, and with a complete and total disregard for his civl rights. Consequently, punitive damages are warranted to deter Carilion and others from like conduct in the future.

WHEREFORE, Fuller demands judgment against the Defendant Carilion for its cause of action in an amount sufficient to compensate Plaintiff for the injuries sustained and identified herein as well as pre- and post-judgment interest, court costs, attorneys fees, and any other damages as this Court may find to be just and appropriate, and as provided by law.

<u>COUNT III</u>
<u>FALSE IMPRISONMENT</u>

COMES NOW THE Plaintiff and re-alleges and incorporates by reference herein paragraphs 1 -36 of the "FACT" provisions of the complaint, and further states as follows:

1. Carilion Clinic employs, controls and directs the activities of the Carilion police and is au-thorized by the Commonwealth of Virginia to maintain a private police department.

2. The legal authority of the Carilion Clinic's private police department is limited to the geo-graphical boundaries of the property operated by the Carilion Clinic corporate entity.

3. The Carilion Police has no authority to detain, arrest or interrogate any private citizen in any civil matter.

14

4. The Carilion Police did not have the authority to effectuate an arrest at Fuller's private residence.

5. The Carilion Police did not that the authority to carry out a warrantless arrest pursuant to Virginia Code § 19.2-8.

6. The Carilion Police did not observe, nor were they engaged in, any actions to detect or to prevent any crime involving or relating to Fuller while on the property controlled by Carilion Clinic on September 14th, 2017 or on September 15th, 2017.

7. The Carilion Police did not attempt, at any time, to detain Fuller in connection with any potential or perceived criminal offense at any time on September 14, 2017 while Fuller was performing his job duties on the Carilion Clinic premises.

8. The Carilion police did not issue, nor did Carilion obtain, a warrant for Fuller's arrest at any time on September 14 or 15, 2017.

9. That in performing a "surround and call out" maneuver off the Carilion property at Fuller's private residence, the Carilion police acted wholly outside of and without any legal authority whatsoever as provided by Virginia Code Section 9.1-101.

10. That the words and actions of the Carilion Police at Fuller's private residence as alleged herein on September 15, 2017 were such that Fuller was afraid to ignore the police demand to enter the custody of the Carilion police, and Fuller justifiably believed that the Carilion Police were capable of and intended to falsely imprison Fuller by force.

11. That the words and actions of the Carilion Police to Fuller at his residence on September 15th 2017 were such that Fuller reasonably believed he was required to submit to the Carilion Police, and that his refusal to do so would result in bodily harm.

12. That the Carillon Police falsely imprisoned and detained Fuller by demanding that Fuller be taken by the Carilion Police to the police station at Carilion, and Carilion Police accomplished this objective through unlawful force by visibly displaying loaded firearms to Fuller and threatening Fuller with an arrest on felony charges.

13. That the Carilion Police falsely, and without any justification or legal authority to do so, unlawfully detained Fuller in a Carilion police security vehicle by transporting Fuller against his will to the Carilion police station.

14. That the Carilion Police, falsely, and without any justification or legal authority of any kind, imprisoned Fuller at the Carilion police department for the purpose of interrogation and coercing a confession from Fuller. Further, Carilion Police refused to release Fuller from his imprisonment, providing Fuller with no means of escape unless and until Fuller provided Carilion police with a false confession.

15. That as a result of the acts committed by Carilion, Fuller has been injured. Carillon knew and was aware prior to his arrest that Fuller suffers from Asperger's syndrome, and Carilion knowingly and intentionally engaged in arrest and interrogation tactics that are recognized and intended to cause the target of those tactics fear, apprehension, anxiety, humiliation, distress and mental anguish. Consequently, Fuller has been diagnosed with and suffers from post-traumatic stress disorder as a result to Carilion's actions. The effects of the post traumatic syndrome have been exacerbated by his Asperger's syndrome. Fuller has suffered psychologically, and still suffers the effects of humiliation, terror, anxiety, emotional distress, and fear.

16. Because Carilion knew that Fuller suffered from a disability and despite knowing that its arrest and interrogation tactics would accomplish the psychological damage inflicted upon Fuller, Carilion chose to engage in such a course of action with willful and reckless disregard of their effects on Fuller in light of Fuller's disability, and with a complete and total disregard for his civil rights. Consequently, punitive damages are warranted to deter Carilion and others from like conduct in the future.

WHEREFORE, Fuller demands judgment against the Defendant Carilion for its cause of action in an amount sufficient to compensate Plaintiff for the injuries sustained and identified herein as well as pre- and post-judgment interest, court costs, attorneys fees, and any other damages as this Court may find to be just and appropriate, and as provided by law.

COUNT IV

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

COMES NOW THE Plaintiff and re-alleges and incorporates by reference herein paragraphs 1-36 of the "FACT" provisions of the complaint, and further states as follows:

1. That Carilion Clinic operates and maintains a private police department which is directed and controlled by Carilion.

2. On September 14, 2017 Carilion police/employees investigated Fuller's discovery of three burnt matches and a piece of paper. In the course of the September 14, 2017 investigation, Fuller completed his work shift, provided answers to the investigating officers' questions and provided police with the matches and singed paper that he had been previously directed to discard.

3. The September 14, 2017 investigating officers did not interrogate Fuller and did not find any evidence of a fire or any damage to Carilion property.  No investigating police officer detained Fuller or prevented him from completing his job duties for the remainder of his work shift.  No police officer  questioned Fuller further about the matches and the singed paper Fuller had discovered.  Fuller's shift supervisor gave Fuller no indication that there was any type of problem.

4.  By 10:30 a.m. on September 15, 2017,  when Carilion police stormed Fuller's residence, nine hours had elapsed since Fuller had completed his shift and left the Carilion premises. There were no exigent circumstances which created probable cause for Carilion to believe a crime had been committed or was in the process of being committed. Moreover, there was no legal mechanism which allowed Carilion to make a warrantless arrest on Fuller's property.

5. By the time Carilion police sought to arrest Fuller on September 15, 2017,  Carilion knew that Fuller's discovery of the matches and burnt paper was an employment matter and there was no criminal activity in progress which necessitated an arrest, false imprisonment and an interrogation.

6. Carilion had, at all times, the ability and authority to suspend and/or terminate Fuller. Carilion ultimately did both, and was entitled to do so as Fuller was an employee at will.

7.  Rather than simply suspend Fuller or terminate Fuller immediately,  Carilion instead chose to wrongfully exercise it's police power to threaten, terrorize and humiliate Fuller through swat team tactics, false imprisonment and hostile interrogation techniques as set forth in paragraph nos.  1-36 above.

8.  Carilion's actions against its employee were intended to inflict emotional distress upon Fuller.  Carillion's humiliation of Fuller because of his disability,  the use of interrogation

techniques intended to capitalize upon the symptoms of Fuller's affliction with Asperger's syndrome were intended to intentionally inflict emotional distress upon Fuller.

9. As an employer, Carilion's conduct as described herein was outrageous and intolerable. Carilion, as a for profit corporation,  is one of only nine private police departments authorized by statute within the entire commonwealth of Virginia. Carilion utilized it's position of power as a private police department to deny its own employee of his civil rights. Further, Carilion utilized its position of power and privileged law enforcement status to terrorize Fuller, who was known to Carilion to be disabled, under the guise of a criminal police investigation.  Carilion's police department has no accountability to any  authority other than the legal system, and the abuse of its power to threaten employees and falsely imprison them offends the generally accepted standards of decency and morality of the community at large.

10.  Carilion's blatant abuse of its power is equally shocking to the conscience given that Carilion is a for profit corporation and does not answer to any democratically elected authority. Carilion violated Virginia Codes Section 9.1-101 by engaging in law enforcement activities outside it's statutory jurisdiction.  Carillon then conducted an illegal,  warrantless arrest in violation of Virginia Code Section 19.2-81.  The violation of both statutes  then allowed Carilion to falsely imprison its own employee,  conduct an enhanced interrogation, and, ultimately, extract from Fuller,  disabled, shaking, crying and fearful, a coerced confession.  Fuller's only remedy is the legal system. There is no city council, elected official or county board to hold a private police department accountable for its misdeeds. The abuse of such power, particularly when directed to an employee over whom Carilion already had control, offends all sense of decency.

11. Fuller's injuries have been proximately caused by Carilion. As a result of the acts committed by Carilion, Fuller has suffered severe emotional distress.   Carillon personnel knew and were aware that Fuller suffers from Asperger's syndrome,  and Carilion knowingly and intentionally  engaged in arrest and interrogation tactics that are recognized and intended to cause

the target of those tactics fear, apprehension, anxiety,  humiliation, distress and mental an-guish. Consequently,  Fuller has been diagnosed with and suffers from  post-traumatic stress disorder proximately caused by Carilion.  The effects of the post traumatic stress disorder are exacerbated by Fuller's Asperger's syndrome.  Fuller has suffered psychologically, and still suffers the effects of  humiliation,  terror, severe anxiety, emotional distress, sleeplessness and fear.

12. Because Carilion knew that Fuller suffered from a disability and despite knowing that its arrest and interrogation tactics would accomplish the psychological damage inflicted upon Fuller, Carilion chose to engage in such a course of action with willful and reckless disregard of the effects of Carilion's actions upon Fuller in light of  Fuller's disability,  and with a com-plete and total disregard for Fuller's  civl rights.  Consequently,  punitive damages are war-ranted to deter Carilion and others from like conduct in the future.

WHEREFORE, Fuller  demands judgment against the Defendant Carilion for its cause of ac-tion   in an amount sufficient to compensate Plaintiff  for the injuries sustained and identified herein as well as pre- and post-judgment interest, court costs, attorneys fees, and any other damages as this Court may find to be just and appropriate, and as provided by law.

## A JURY TRIAL IS HEREBY DEMANDED ON ALL COUNTS

**ROGER S. FULLER, JR.**

s/_____
By Counsel
John M. Loeschen
Loeschen Law Firm, PLLC
30 East Clay St. #201
Salem, VA 24153
VSB 48996
877-645-0683
johnloeschen@yahoo.com

20

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed on the 15th day of February, 2018 with the Clerk of the Court via the CM/ECF filing system, which will send notification of such filing to the counsel of record below:

Paul C. Kuhnel, Esq., (VSB 28151)
LeClairRyan, a Professional Corporation
10 South Jefferson Street
18th Floor, Wells Fargo Tower
Roanoke, VA 24011
540-510-3000 ph.
540-510-3050 fax
paul.kuhnel@leclairryan.com

Counsel for Defendant